IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| COLUMBIA CASUALTY COMPANY,<br><br>    Plaintiff,<br><br><br><br>           vs.<br><br><br><br>SMI LIQUIDATING, INC., a Utah corporation, fka SORENSON MEDICAL, INC.; SORENSON MEDICAL PRODUCTS, INC., a Utah corporation; SORENSON DEVELOPMENT, INC., a Utah corporation; SDI RESIDUAL ASSETS, LLC, a Utah corporation,<br><br>       Defendants. | MEMORANDUM OPINION<br>AND ORDER<br><br><br><br><br><br>Case No. 2:10-CV-821<br><br><br>Judge Dee Benson |

This matter is before the court on cross motions for summary judgment.  (Dkt. Nos. 39 &

46.)  At the parties' request, the court heard oral argument on the motions.  At the hearing,

Plaintiff Columbia Casualty Company ("Columbia") was represented by Steven Crane and Scott

DuBois.  Defendants SMI Liquidating, Inc., Sorenson Medical Products, Inc., Sorenson

Development, Inc., and SDI Residual Assets, LLC (collectively "Sorenson") were represented

by Jeffrey Mando, Jason Juhlman, and John Ashton.  Before the hearing, the court considered the

memoranda and other materials submitted by the parties.  Since taking the matter under

advisement, the court has further considered the law and facts relating to the motion.  Now being

fully advised, the court renders the following Memorandum Opinion and Order.

## BACKGROUND

Sorenson was a manufacturer of medical devices, including ambulatory infusion pumps

that were used after surgery to deliver pain medication (pain pumps).  This case concerns

Sorenson's claims for insurance coverage for pain pump claims filed against Sorenson in various

jurisdictions under two products liability policies that were issued by Columbia to Sorenson for

the policy periods July 1, 2007 - July 1, 2008 (the "Year One policy")[1] and July 1 2008 - July 31,

2009 (the "Year Two policy").  The parties dispute whether there is coverage under the Year

Two policy.

### The Year One Policy

Sorenson purchased the Year One policy from Columbia for a premium of $99,200.  The

effective date of the Year One policy was July 1, 2007, and the policy period was from July 1,

2007 to July 1, 2008.  The limits of liability under the Year One policy were $10 million for each

claim and $10 million aggregate.  The deductible was $25,000 per claim, with a $125,000

aggregate/limit.  (Pl.'s Mot. for S.J., Ex. A at 1.)

Section I.A. of the Year One policy provides that Columbia "will pay all amounts in

excess of the deductible up to the limit of liability that the insured becomes legally obligated to

---

[1]The Year One policy was actually a renewal of Policy No. ADT2091144230-1, which covered 2006-2007.  The parties agree that the 2006-07 policy has no application to the claims now before the court and therefore is not relevant for purposes of this lawsuit.

pay as **damages** and **claim expenses** as a result of a covered **products-work hazard claim** by

reason of an **occurrence**."[2]   (Id.)  Section II.D. of the policy is entitled "LIMITS OF LIABILITY

AND DEDUCTIBLE – Multiple Insureds, claims and claimants."  It provides:

> The limits of liability shown in the Declarations and subject to the provisions of this
> Policy is the amount the Company will pay as **damages** and **claim expenses** regardless
> of the number of Insureds, **claims** made or persons or entities making **claims**.  If **related
> claims** are subsequently made against the Insured and reported to the Company, all such
> **related claims**, whenever made, shall be considered a single **claim** first made and
> reported to the Company within the **policy period** in which the earliest of the **related
> claims** was first made and reported to the Company.

(Id.)
The meaning of the "related claims" clause turns on the following terms defined within

Section V of the Policy:

> **Related claims**: all **claims** arising out of same **occurrence** or **occurrences**.

> **Occurrence**: an accident, including continuous or repeated exposure to substantially the
> same general harmful conditions which arises out of **your product** or **your work**.

> **Related Occurrence**: all **occurrences** that are logically or causally connected by any
> common fact, **circumstance**, condition, situation, transaction, event, advice or decision
> in the design, formulation, manufacturing, distribution, sale, testing, use, operation,
> maintenance, repair or replacement of **your product** or **your work**.

> **Circumstance**: an event reported during the **policy period** from which **you** reasonably
> expect that a **claim** could be made.

The Year One policy does not specifically address whether claims alleging injury from

the use of a Sorenson continuous infusion pump – whether used to infuse pain medicine in the

shoulder or elsewhere – would be treated as "related claims."

---

[2]Words that are designated in **bold** are specifically defined in Section V of the Policy.
(Pl.'s Mot. for S.J., Ex. A at 9.)

**The Initial Shoulder Pump Claims in Year One & Initial Claims Handling**

On February 14, 2008, four claimants filed the first of the Shoulder Pump Claims against Sorenson in the United States District Court for the Eastern District of Kentucky.  (Pl.'s Mot. for S.J., Ex. E, Ritchie, et al. v. SMI Liquidating, Inc., Case No. 08-cv-0019 (E.D. Ky. 2008).)[3] Sorenson tendered the Ritchie complaint to Columbia on or about February 27, 2008, within the term of the Year One policy.

Upon receipt of the Ritchie suit, Columbia's claims manager Tom Morelli sent an email to Danna George, the claims adjuster assigned to the file, explaining that the complaint "involv[ed] four plaintiffs, with four different occurrence (surgery) dates."  (Pl.'s Mot. for S.J.. Ex. I at 1.)  Morelli summarized the allegations as claims for "defective pain pumps inserted into each of the plaintiff's shoulders following surgery."  Id.  Morelli added, "I do not see any readily identifiable coverage defenses."  Id.  Morelli did not at that time consider whether or not the claims should be treated as "related claims."  (Pl.'s Opp'n, Ex. C, Morelli Dep. at 63.)

Danna George, the claims adjuster, similarly characterized the claims as separate losses and treated them as distinct claims.   (Pl.'s Opp'n, Ex. Z, George Dep. at 72.)  Like Morelli, George did not question whether the claims should be "related."  Rather, Columbia assigned a separate claim number to and maintained a separate file on each claimant.  (Id. at 75-76.)

In the beginning of March 2008, Columbia retained Attorney Brian Goldwasser to defend Sorenson in the shoulder pain pump claims pending in Kentucky.  On March 6, 2008, George

---

[3]Subsequently, two claimants were added and one of the original plaintiffs voluntarily dismissed his claim because he had not been treated with a Sorenson product.  (Pl.'s Mot. for S.J., Ex. E, Ritchie, et al. v. SMI Liquidating, Inc., Case No. 2:08-CV-19 (E.D. Ky. 2008).)

sent a letter to Goldwasser confirming the assignment of the defense of the <u>Ritchie</u> suit.  In summarizing the terms of the Year One policy, George stated, "each claim is subject to a $25,000 deductible. . . ."  (Def.'s Mot. for S.J., Ex. A.)

On March 27, 2008, George (the claims adjuster) and Morelli (the claims manager) communicated about whether to refer the shoulder pain pump claims to Columbia's "Claims Legal Exposure Management (CLEM)" division within its legal department. .)  Patricia Carbone was the senior litigation attorney within CLEM at the relevant time, and the purpose of CLEM was to assist the claims department in resolution strategies or pursuing coverage issues.  Carbone explained that claims are referred to CLEM if, among other things, the potential exposure to Columbia exceeds $1 million or the claim presents a coverage issue.  (Def.'s Mot. for S.J., Ex. AD, Carbone Dep. at 8-9, 14-15.)  According to Carbone, the <u>Ritchie</u> claims were referred to CLEM because of the potential for high dollar exposure, and not because of any "related claims" issue.  (<u>Id.</u> at 20.)

George's March 27, 2008 notes regarding the CLEM referral indicated that the referral was made "[s]ince all the claims are for the same product, same doctor, and same injury." (Def.'s Mot. for S.J., Ex. B.)  According to George, "when there's also a claims trend, we also advise CLEM."  (Def.'s Mot. for S.J., Ex. AF, George Dep. at 92.)  Morelli's corresponding claims notes also indicated that "Danna [George] believes each may meet our threshold referral parameters based on injury, lost time from work, and the fact of multiple lawsuits leading to an MDL."  (Def.'s Mot for S.J., Ex. C.)  Morelli decided to refer the <u>Ritchie</u> claims to CLEM in an "advisory capacity," meaning that "we aren't sure whether we need to have CLEM oversight, we

aren't sure of the potential value here, but it's looking like this is something that we – we would like early input on." (Id.)

Columbia's internal documents reveal that on May 13, 2008, Columbia's claims staff and CLEM discussed, for the first time, whether the shoulder pain pump claims might be considered "related claims" under the Year One policy. (Def.'s Mot. for S.J., Ex. D & E.)  Morelli's notes about the meeting (entitled "CLEM discussion") state, in part: "Requested Danna [George] set a follow up call for 30 days hence and at that point we will consider the question of related occurrences once we have more information such as whether such claim can be argued to be proximately caused by product defect."  (Id., Ex. D.)  The proposed follow-up teleconference was scheduled to take place in mid June – in close proximity to the policy "renewal" date of July 1, 2008.  However, none of the Columbia employees involved in these CLEM discussions – Carbone, Morelli, or George – could recall if the follow up meeting actually occurred.

In late May 2008, additional claimants filed separate lawsuits against Sorenson in Kentucky.  (Pl.'s Mot. for S.J., Ex Q (Cornett & Wera v. SMI Liquidating, E.D. Ky 2008), Ex. R, (Zink v. SMI Liquidating, E.D. Ky 2008).)  The allegations were nearly identical to those in Ritchie.  Although these suits did not identify the specific pump model, subsequent discovery showed that the Sorenson "ambIT PreSet" pump was used in each case.

**The Year Two Policy**

In June 2008, Columbia underwriter Valerie Marsiano underwrote the Year Two policy. On June 2, 2008, Sorenson sent Columbia its application for the Year Two policy through its local broker in Salt Lake City, Fred A. Moreton & Company (hereinafter "Moreton").  Valerie

Marsiano, Columbia's underwriter responsible for the Year Two policy, consulted a "loss run report" in order to identify basic financial data on any recent claims activity.  The shoulder pump claims were reflected on the loss run report.  This activity prompted Marsiano to call Morelli, the claims manager.  Morelli was, at that time, aware that the Year One policy was a claims-made policy, and he was aware of the effective date and expiration date of the Year One policy. Moreover, Morelli explicitly acknowledged that it "may have crossed my mind" that a renewal policy was being underwritten at the time his department was contemplating treating all of the shoulder pump claims as "related claims," but neither he, nor anyone else, advised underwriting. (Def.'s Mot. for S.J., Ex. AF, George Dep. at 109, 111; Ex. AJ, Morelli Dep. at 105-06; Ex. AD, Carbone Dep. at 29-30; Ex. AI, Marsiano Dep. at 60.)

Accordingly, and more to the point, although CLEM and the claims department had discussed whether the shoulder pump claims might be characterized as "related," Morelli did not share this information with Marsiano.  As a result, Marsiano recounts: "So, based on that conversation [with Morelli], I made a decision to increase the deductible for the shoulder pump claims."  (Def.'s Mot. for S.J., Ex. AI, Marsiano Dep. at 67-68.)  By raising the deductible for shoulder pump claims, Marsiano's intention was that the increase would reflect an amount equal to her estimate of the average claim amount for Shoulder Pump Claims, thereby shifting what she believed would be the cost of most, if not all, of any future shoulder pump claims to Sorenson.  (Id. at 72 -74.)   Similarly, Marsiano's decision to have no aggregate limit on deductibles was likewise designed "to have the insured pick up more of the loss."  (Id. at 74.) These deductible terms would apply for shoulder pump claims made in the upcoming Year Two

policy year.  (Id. at 73, 75.)

Marsiano's resulting quote for the Year Two policy incorporated the increased deductible terms.  The per claim deductible amount for "Shoulder Pumps Only" increased tenfold to $250,000 per claim, and the lack of an aggregate limit meant that the potential amount Sorenson would have to pay in deductibles for shoulder pump claims would be unlimited.  For other claims (i.e., "Excluding Shoulder Pumps"), there was no proposed change; the deductible remained $25,000 per claim, with a $125,000 aggregate limit.

The substantial shift of financial responsibility to Sorenson was no surprise.  Well before the quote was received, Sue Simpson, an account manager with Moreton, advised Sorenson that the premium and deductibles for the upcoming policy year might change for the worse because of the recently-filed shoulder pump lawsuits in Kentucky.  (Pl.'s Mot. for S.J., Ex. F, Simpson Dep. at 56-57, 124-26.)   A June 12, 2008 email between Marsiano and John Kolar, one of Marsiano's subordinates, reflects that Kolar discussed the terms of the upcoming quote with the wholesale broker.  Kolar wrote, "I gave him an indication, stating we are toying with $130K in premium but are firm on the deductible."  (Def.'s Mot. for S.J., Ex. K.)   The "deductible" was a reference to the special "Shoulder Pumps Only" deductible terms Marsiano developed.  (Def.'s Mot. for S.J., Ex. AI, Marsiano Dep. at 66-68.)  The wholesale broker informed Moreton, who in turn told Sorenson, that the upcoming policy quote would have a different deductible structure.  (Pl.'s Mot. for S.J., Ex. F, Simpson Dep. at 61-62.)  Simpson described Sorenson's reaction as follows:

> They weren't surprised about it because they knew the possibility of it changing the deductible structure.  They weren't happy about it, but under the situation with the

claims, there were outstanding and we anticipated more coming in, that they – it was like, that's the best we can do.  And they understood that there – there would be a different structure.

(Id. at 62.)

Jim Larson, CFO of Sorenson Development Inc. and the person in discussions with Moreton recalls Moreton reporting "[t]hat because the insurance company was concerned about the shoulder claims, that they were going to require higher deductible in the next year to buy coverage."  (Def.'s Mot. for S.J., Ex. AH, Larson Dep. at 66.)  Larson understood that a "shoulder pump claim" made against Sorenson during the Year Two policy would have a $250,000 per claim deductible.  Id. at 89.  Notwithstanding the magnitude of the deductible, Sorenson agreed to it.  (Id. at 66-67.)   According to Larson, "[w]e felt we needed the coverage, and so we made the decision to go ahead with it."  (Id.)

Prior to the effective date of the Year Two policy, Columbia never advised Sorenson that the shoulder pump claims were "related claims," nor did Columbia suggest to anyone at Sorenson that it was contemplating treating them as such.  (Def.'s Mot. For S.J., Ex. AJ, Morelli Dep at 120-21.)  In fact, on the day the Year One policy expired and the Year Two policy began – July 1, 2008 – Columbia itself had not made that determination

The Year Two policy became effective on July 1, 2008, and the policy period extended to July 1, 2009.  As with the Year One policy, the limits of liability were $10 Million per claim / $10 Million aggregate.  (Pl.'s Mot. for S.J., Ex. B.)  Consistent with the quote, the Policy Declarations specified the following deductible terms:

| Item 6. | Deductible | | |
|---|---|---|---|
| | Deductible: | $25,000 – Excluding Shoulder Pumps | Each **Claim** |

| $125,000 – Excluding Shoulder Pumps | Policy Aggregate |
| $250,000 – For Shoulder Pumps Only | Each **Claim** |
| $Unlimited – For Shoulder Pumps Only | Policy Aggregate |

(Pl.'s Mot. for S.J., Ex. B.)

As with the quote, Marsiano authored the "Excluding Shoulder Pumps" / "Shoulder Pumps Only" language in the Declarations of the Year Two policy.  Marsiano testified that the intention behind these terms was that the deductible for "Shoulder Pumps Only" would apply to future claims like the ones previously filed against Sorenson in Kentucky.  (Def.'s Mot. for S.J., Ex. AI, Marsiano Dep. at 75.)  Conversely, "Excluding Shoulder Pumps" was intended to refer to future claims other than those alleging injury from the use of a Sorenson pump for pain relief following shoulder surgery.  (Id. at 101-102.)

### Additional Shoulder Pump Claims

As stated previously, while the Year Two policy was being negotiated and then after it was issued, additional shoulder pain pump claims were filed against Sorenson and tendered to Columbia. (Pl.'s Mot. for S.J., Ex. Q, Cornett & Wera v. SMI Liquidating, E.D. Ky 2008.)

In addition to those mentioned above, on or about August 6, 2008, Columbia received notice of two more shoulder pain pump claims against Sorenson in federal court in Kentucky. (Pl.'s Mot. for S.J., Ex. R (Zink v. SMI Liquidating, E.D. Ky 2008); [4] Ex. S (Belcher v. SMI Liquidating, E.D. Ky 2008).)  On or about August 18, 2008, a shoulder pain pump complaint against Sorenson, filed in federal court in California, was tendered to Columbia.  The Klawer lawsuit implicated a different model of pump than did the Kentucky cases – the "amBIT LPM"

---

[4]Zink was filed at the end of May 2008, but was not served until July 2008.

pump.  (Pl.'s Mot. for S.J., Ex. V, <u>Klawer v. SMI Liquidating</u>, (C.D. Cal. 2008).)  On or about

September 8, 2008, a shoulder pain pump complaint filed against Sorenson in Utah was tendered

to Columbia.  (Pl.'s Mot. for S.J., Ex. W, <u>Hansen v. SMI Liquidating</u>, (D. Utah 2008).)  The

Hansen lawsuit implicated yet a third model of pump – the "amBIT PCA."

When Greg Taylor of Sorenson tendered the Utah Hansen claim to Columbia in 2008, his

cover email stated: "I have attached a copy of a new complaint received regarding the same

circumstances as all of the other litigation pertaining to doctor's off-label use of the ambIT

pump."  (Pl.'s Mot. for S.J., Ex. X .)

Over the course of 2008 and 2009, more than two dozen lawsuits were filed in various

jurisdictions against Sorenson alleging injuries – chondrolysis of the shoulder – as a result of the

use of a Sorenson ambulatory infusion pump for pain management after shoulder surgery.  (Pl.'s

Mot. for S.J., Exs. E, Q, R, S, V, W & Y.)

The lawsuits contained similar allegations of strict products liability, including defective

design, failure to warn, and that the pain pumps were unreasonably dangerous.  They all claimed

that chondrolysis of the shoulder resulted after the pain pumps were used after shoulder surgery.

Mr. Goldwasser, the attorney hired by Columbia, developed a uniform strategy for all of the

cases across the country.

**<u>Columbia's Decision to Deem Shoulder Pump Claims "Related Claims"</u>**

In the interim, in early August 2008 – roughly one month after the inception of the Year

Two policy – Morelli, in consultation with George and Carbone, determined that all of the

shoulder pump claims would be treated as "related claims" under the Year One policy.  (Def.'s

Mot. for S.J., Ex. AJ, Morelli Dep. at 115 & Ex. BB.)  Thereafter, Morelli directed George to draft a letter to inform Sorenson, for the first time, of Columbia's decision on the "related claims" issue.  (Id. at 121.)  George drafted a letter that was reviewed, revised and, ultimately approved by Morelli on August 8, 2008.  However, the letter was not sent to Sorenson for another ten days.  It was not until August 18, 2008, nearly seven weeks after the inception of the Year Two policy, that Columbia first notified Sorenson of its "related claims" position.  Columbia's Related Claims Letter stated, in part:

> Columbia Casualty Company ("Columbia") is in receipt of the referenced claim notices, received on various dates through August 6, 2008 for consideration of coverage under Policies ADT2091144230-1 and ADT2091144230-2.  The purpose of this letter is to notify you that Columbia will treat each of these claims as related claims arising from a 'related occurrence' as defined under the Policy, effective as of the date of notice to this Company of the first of these claims, on February 28, 2008.

(Pl.'s Mot. for S.J., Ex. CC.)

As set forth, both the Year One and Year Two policies were mentioned in the related claims letter, indicating that Carbone, George and Morelli knew that Columbia had already issued the Year Two policy to Sorenson.  However, despite reference to the Year Two policy, the Columbia officials responsible for making the "related claims" decision – George, Morelli and Carbone – did not account for the fact that Columbia had already entered into the Year Two policy that set forth specific deductibles for the same shoulder pump claims they were now claiming related back to the Year One policy.

The letter also stated that Columbia henceforth considered a "related occurrence" to be: "Bodily injury and/or property damage arising from the use of Sorenson amBIT Preset and/or amBIT PCA pumps in post operative pain management for shoulder surgeries."  (Id.)

12

After stating the "related occurrence" definition, the letter explained:

These claims – and any others which may be submitted arising from this occurrence – will be considered for coverage under policy number ADT2054989289-1 issued to Sorenson Medical, Inc. for the period 8/1/2007 to 8/1/2008. The policy provides coverage of $10,000,000 per claim, subject to an aggregate amount of $10,000,000 for the policy term, and further subject to a deductible of $25,000 per claim, subject to an aggregate amount of $125,000 for the policy term.

(Id.)[5]

Under the terms of the Year One policy, claims properly related under the "related claims" clause would be treated as a "single claim," for purposes of the deductibles. (Pl.'s Mot. for S.J., Ex A at 2, Section II.D.) However, at the time Columbia sent the Related Claims Letter, Columbia was still charging Sorenson separate deductibles for each individual claim.

The Related Claims Letter closed by noting that its purpose was "solely to advise Sorenson Medical Inc. of Columbia's decision to declare and define a related occurrence, and to consider the claims submitted thus far to be related." (Pl.'s Mot. for S.J., Ex. CC.) Columbia has never limited, denied, or disclaimed coverage for any other reason. (Def.'s Mot. for S.J., Ex. AJ, Morelli Dep. at 135.) The Related Claims Letter did not say anything about Sorenson having any right to challenge or appeal Columbia's determination. (Pl.'s Mot. for S.J., Ex. CC.)

**Subsequent "Related Claims" Letters**

  1. The Hanson Letter

As set forth above, in early September 2008, Columbia received notice of the Hansen lawsuit – the first lawsuit filed against Sorenson in Utah. Hansen and subsequent Utah claims

---

    [5]The policy identified in this paragraph is neither the Year One nor the Year Two policy. Even so, in light of the policy period and the terms, the parties appear to have understood it to be referring to the Year One policy.

involved a third model of Sorenson pump – the "amBIT PCA."  (Def.'s Mot. for S.J., Ex. AG,

Goldwasser Dep. at 14, 78.)  Morelli instructed George to prepare a "coverage letter" within 30

days.  (Def.'s Mot. for S.J., Ex. S.)  George authored a claims note indicating that she would

draft another letter similar to the Related Claims Letter and get approval from Morelli before

sending it to Sorenson.  (Id., Ex. T.)  The resulting November 5, 2008 letter (hereinafter "Hansen

Letter") is similar to the original Related Claims Letter, except that it addressed only the Hansen

claim.  The Hansen Letter stated that Columbia had considered the claim for coverage under

both the Year One and Year Two policies, but that its purpose was to notify Sorenson that

Columbia will treat the Hansen claim as 'related' to all other claims arising from the following

"related occurrence:"

> Bodily injury and/or property damage arising from the use of Sorenson amBIT Preset
> and/or amBIT PCA pumps in post operative pain management for shoulder surgeries.

(Pl.'s Mot. for S.J., Ex. EE.)

The Hansen Letter set forth the same definition of "related occurrence" and quoted the

same policy provisions as the original Related Claims Letter.  It also did not indicate that

Sorenson had any right to challenge or appeal Columbia's related claims determination.

     2.    The May 2009 Amended Related Claims Letter

On May 27, 2009, Columbia sent another "related claims" letter to Sorenson (hereinafter

"Amended Related Claims Letter").  The Amended Related Claims Letter altered Columbia's

prior definition of a "related occurrence."  During the time between the Hansen Letter and the

Amended Related Claims Letter, there had been several developments on both the claims and the

underwriting fronts.

First, several more suits had been filed against Sorenson, including 3 in Kentucky, 2 in Utah, 1 in Mississippi, and 1 in Minnesota.  The Mississippi and Minnesota cases involved still different models of Sorenson pumps that were not part of the amBIT line – the "MicroJect" in Mississippi, and the "Palm" in Minnesota.

Second, in early April 2009, Columbia's underwriting department directed that a notice of non-renewal be sent to Sorenson.  (Def.'s Mot. for S.J., Ex. V.)  Valerie Marsiano testified that while she does not specifically remember ordering this non-renewal, such a decision would have been hers to make.  (Def.'s Mot. for S.J., Ex. AI, Marsiano Dep. at 98-90.)  The reason identified for the non-renewal was claims activity.

The Amended Related Claims Letter addressed "Various" claimants, identified by 24 claim numbers.  (Pl.'s Mot. for S.J., Ex. FF.)  It further indicated that Columbia considered these claims for coverage under the Year One policy only.  It also advised that "Columbia has amended this definition [of a related occurrence] per this letter, and the definition cited herein supersedes that in prior correspondence."  (Id.)  The amended definition of "related occurrence" now provided:

> Bodily injury and/or property damage arising from the use of Sorenson pain pumps in post operative pain management for shoulder surgeries.

(Id.)

The Amended Related Claims Letter substituted a more general reference to "Sorenson pain pumps" instead of the more specific, "Sorenson amBIT Preset and/or amBIT PCA pumps," providing for a more expansive definition of "related occurrence."  (Compare Pl.'s Mot. for S.J. Ex. CC with FF.)

According to George, there was no particular reason why this letter was sent at this particular time.  (Def.'s Mot. for S.J., Ex. AF, George Dep. at 147-48.)  Morelli, however, admitted that it was an attempt to capture recent claims that did not fit the "related occurrence" definition set forth in Columbia's prior letters.  He testified:

> The most honest thing I can say is that I do remember Dana [George] called me and advised me one day that she was – she had received claims and they did not arise from the amBIT pump, or she said that there was a question as to whether it was an amBIT pump, and she wanted to have a discussion with me and Tricia [Carbone] about whether that was part of what we considered related.

(Def.'s Mot. for S.J., Ex. AJ, Morelli Dep. at 164.)

A discussion among Carbone, George and Morelli followed without any discussion about the differences between the different Sorenson pumps.  (Id. at 144.)  Nonetheless, they decided to amend what Columbia would deem to be a "related occurrence" for purposes of its policies.  (Id. at 145-46.)

### Defense & Indemnity Payments by Columbia; Columbia Tenders the Limits of the Year One Policy; and Further "Related Claims" Discussion

Initially, Columbia paid all defense costs incurred in defending the claims against Sorenson and Columbia made indemnity payments as a result of various mediations and or settlement conferences.[6]  For example, Columbia settled a Shoulder Pump Claim against Sorenson in Colorado, and similarly made indemnity payments (settling a total of 12 claims in Kentucky) as a result of two mediations / settlement conferences that took place in November of 2009 and March of 2010.

---

[6] Both the Year One and Year Two policies are "eroding" policies, meaning that indemnity payments and defense costs paid by the carrier apply toward exhausting the limits of the liability policies.

The "related claims" issue surfaced during the aforementioned November 2009 mediation.  Greg Taylor, General Counsel for Sorenson and the addressee of the original Related Claims Letter, testified as to Sorenson's confusion over the related claims issue:  "[C]andidly, it seemed strange to relate all of those back to the first [policy] because it seemed very, very clear that [Columbia] had, in fact, looked at that, contemplated that, underwrote that by having the, you know, ten-fold deductible per claim [in the Year Two policy]."  (Pl.'s Mot. for S.J., Ex. AL, Taylor Dep. at 29.)  Taylor added, "so when we had that coupled with the fact that, during the first year, we got multiple deductible bills for multiple cases during that time period, our understanding was each one of these claims would stand on their own."  (Id.)  At the November 2009 mediation, Sorenson expressed to Columbia that it did not agree with Columbia's position. (Id. at 82-83.)  Additionally, Sorenson initially did not have a firm understanding as to what all of the ramifications of the "related claims" decision would be. (Id. at 84-85.)

Then, on January 27, 2010, Patricia Carbone informed Sorenson by letter that Columbia intended to tender the remaining limits of the Year One policy to Sorenson.  (Pl.'s Mot. for S.J., Ex. L.)  This letter followed a conversation between Carbone and Greg Taylor. (Id. & Ex. AL, Taylor Dep. at 107.)  Taylor recalls that Carbone had called to discuss the "related claims" issue and to inform Sorenson that Columbia would be tendering the balance of its policy limits. Because Taylor did not feel like he fully understood all of the implications of Carbone's statements, he indicated that he would have to discuss the matter with Sorenson's outside counsel.  (Id. at 107-09.)

Carbone's January 27, 2010 letter recited the Year One policy terms and reiterated that

Columbia considers the pain pump litigations to be a related occurrence as defined in the

Amended Related Claims Letter.  (Pl.'s Mot. for S.J., Ex. L.)  Columbia informed Sorenson that

it intended to make all remaining limits (which were estimated at $3,679,764) available to

Sorenson "for use at the mediation of the KY pain pump litigations currently scheduled for

March 2-4, 2009 [sic]."[7]  Columbia further advised that it would not take the lead in

negotiations, and that after this balance was spent, it would be "passing the defense obligation on

to the excess carrier." (Id.)

The January 27, 2010 letter sparked a discussion concerning the deductibles that

Columbia had been charging Sorenson.  On February 11, 2010, Jim Larson, chief financial

officer and controller of SDI residual assets (the successor to Sorenson Development Inc.) sent

Carbone's letter to Moreton, asking Moreton to verify that the deductible was capped at

$125,000 and had been met.  (Def.'s Mot. for S.J., Ex. W.)  A representative of Moreton

responded the next day, indicating that Columbia had informed him that only one $25,000

deductible applied to all shoulder pump claims, and that an effort was underway to determine

how much Sorenson had paid Columbia in deductibles.  (Id.)  Later, Columbia confirmed to

Moreton's Sue Simpson that Sorenson had been billed and paid $96,000 in excess of what

Columbia now claimed was due in deductibles in light of its position on the "related claims"

issue.

Taylor, Sorenson's general counsel, further explained that the news about the deductibles

contradicted Sorenson's understanding of the insurance it had purchased on July 1, 2008 (the

---

[7]Given that the letter was dated January 27, 2010, the reference to future mediation
occurring on March 2-4, 2009 is an obvious error.

Year Two policy).  Taylor stated:

> As far as how it – how we perceived things, that was not the way that we understood
> them when the insurance was taken out and any of those kind of things.  Because, again,
> we paid those – those deductibles.  And so when it came to us that we would be refunded
> those funds, it came as kind of a shock.  It was not what we expected.

(Def.'s Mot. for S.J., Ex. AL, Taylor Dep. at 78.)

Ultimately, Sorenson received a check from Columbia for $96,000 that Columbia

deemed to have been erroneously paid. (Id. at 121, 122, 125.)  However, Sorenson did not

negotiate the check given that it did not agree with Columbia's position on the "related claims"

issue.  (Id. at 125, 127.)

On May 14, 2010, Columbia filed the Complaint in this case, asserting a single cause of

action for declaratory relief, seeking to establish that shoulder pump claims are covered under

the Year One policy only.  (Dkt. No. 1-1, Complaint ¶¶ 17, 19.)  Sorenson answered, asserting

several counterclaims including a request for contrary declaratory relief (to establish that

Columbia owes Sorenson coverage for "Shoulder Pump Claims" under the Year Two policy),

and claims for fraud by omission, equitable estoppel, breach of fiduciary duty, breach of the

covenant of good faith and fair dealing, and breach of contract based on Columbia's failure to

cover Shoulder Pump Claims under the Year Two policy.  (Dkt. No. 16, Counterclaim ¶¶ 28-54.)

Thereafter, the parties filed cross motions for summary judgment.  Columbia's motion for

summary judgment seeks a declaration that it has no further obligation to defend or indemnify

Sorenson for the claims at issue because the Year One policy is the only Columbia policy that

applies to such claims, and that policy has been exhausted by Columbia's payment of its $10

million in policy limits.  Columbia's motion also seeks to have the Court dismiss Sorenson's

19

Counterclaim in its entirety because all of the counterclaims depend on there being coverage under the Year Two policy and, according to Columbia, there is no coverage for the claims at issue under that policy.

Conversely, Sorenson claims that under the proper construction of the insurance policies at issue, Columbia must defend and indemnify Sorenson for shoulder pump claims pursuant to the Year Two policy Sorenson purchased, and Columbia's failure to provide this defense is a breach of the Year Two contract.

## DISCUSSION

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. Id. However, where, as here, there are cross motions for summary judgment, the reasonable inferences drawn from affidavits, attached exhibits, and depositions are rendered in the light most favorable to the non prevailing party. Jacklovich v. Simmons, 392 F.3d 420, 425 (10th Cir. 2004). Furthermore, "[w]hen the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." Atlantic Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000) (internal quotation marks omitted).

In this case, the material facts are not in dispute. Columbia's sole claim in its Complaint

and Count I of Sorenson's Counterclaim are, as Sorenson describes, two sides of the same coin.

Columbia seeks construction of the Year One and Year Two policies such that all shoulder pump

claims "relate back" under the Year One policy, and therefore, according to Columbia, it owes

no coverage for Shoulder Pump Claims under the Year Two policy.  Conversely, Sorenson

argues that, having specifically negotiated over shoulder pump claims for the Year Two policy,

Columbia could not, thereafter, choose to "relate back" all shoulder pump claims to the Year

One policy, and therefore Columbia owes Sorenson for coverage for shoulder pump claims

under the Year Two policy.

 The parties agree that Utah law applies.  (Columbia's Mot. for S.J. at 21 n.10; Sorenson's

Mot. for S.J. at 29.)  Under Utah law, "[a]n insurance policy is merely a contract between the

insured and the insurer and is construed pursuant to the same rules applied to ordinary

contracts."  Alf v. State Farm Fire & Cas. Co., 850 P.2d 1272, 1274 (Utah 1993); see Utah Farm

Bureau Ins. Co. v. Crook, 980 P.2d 685, 686 (Utah 1999).  Accordingly, the court begins its

analysis with a review of well-settled rules of contract interpretation.

 The underlying purpose in construing or interpreting contract is to ascertain the intention

of the parties to the contract. WebBank v. American General Annuity Servs. Corp., 54 P.3d

1139, 1144 (Utah 2002).  Peterson v. Sunrider Corp., 48 P.3d 918, 925 (Utah 2002) ("The

intention of the contracting parties is controlling.").  Courts look to the writing itself to ascertain

the parties' intentions, and consider each contract provision in relation to all of the others, with a

view toward giving effect to all and ignoring none.  WebBank, 54 P.3d at 1144 (citing Jones, 6

P.3d 1129 (Utah 2000)).  If the language within the four corners of the contract is unambiguous,

21

the parties' intentions are determined from the plain meaning of the contractual language, and

the contract may be interpreted as a matter of law.  <u>Central Florida Invests. Inc. v. Parkwest</u>

<u>Assocs.</u>, 40 P.3d 599, 605 (Utah 2002).

However, if the language of the contract is ambiguous such that the intentions of the

parties cannot be determined by the plain language of the agreement, "extrinsic evidence must be

looked to in order to determine the intentions of the parties."  <u>Central Florida Invests, Inc.</u>, 40

P.3d at 605.  "A contract provision is ambiguous if it is capable of more than one reasonable

interpretation because of 'uncertain meanings, terms, missing terms or other facial deficiencies."

<u>Interwest Const. v. Palmer</u>, 923 P.2d 1350, 1359 (Utah 1996).  Moreover, Utah courts have long

subscribed to the view that any ambiguity or uncertainty in the language of an insurance policy

must be resolved in favor of coverage.  Similarly, because the policy is drawn by the insurer,

ambiguities are construed against that party.  <u>See</u> <u>Utah Farm Bureau Mut. Ins. Co. v. Orville</u>

<u>Andrews & Sons</u>, 665 P.2d 1308, 1309 (Utah 1983).

Applying these legal principles to the facts of this case, the court reaches the following

conclusions.

1.      **<u>The Year Two Policy Unambiguously Provides Coverage for Shoulder Pump</u>**
        **<u>Claims</u>**

The Year Two policy, with effective dates from July 1, 2008 through July 1, 2009,

expressly specified the following deductible terms:

| Deductible: | | |
|---|---|---|
| | $25,000 – Excluding Shoulder Pumps | Each **Claim** |
| | $125,000 – Excluding Shoulder Pumps | Policy Aggregate |
| | $250,000 – For Shoulder Pumps Only | Each **Claim** |
| | $Unlimited – For Shoulder Pumps Only | Policy Aggregate |

(Pl.'s Mot. For S.J., Ex. B.)

The "Excluding Shoulder Pump" / "For Shoulder Pumps Only" language contained in the declarations of the Year Two Policy is specific and unambiguous – especially as between the parties to the contract, who, in light of surrounding circumstances, knew what the term "shoulder pumps" meant.  See Holland v. Brown, 394 P.2d 77, 78-79 (Utah 1964).  Moreover, in addition to the unambiguous and explicit language cited above, the rules of contract construction compel the legal conclusion that the Year Two policy provides coverage for shoulder pump claims arising after July 1, 2008.

As stated previously, a central tenant of contract construction requires that "a contract should be interpreted so as to harmonize all of the provisions and all of its terms, which terms should be given effect if it is possible to do so."  LDS Hospital v. Capitol Life Ins., Co., 765 P.2d 857, 858 (Utah 1988).  In this case, the parties to the Year Two policy made a clear and unequivocal agreement that the shoulder pump claims would be covered, subject to specialized deductibles.  To adopt Columbia's position – that the Year Two policy does not provide coverage to those same shoulder pump claims because they "relate back" to the Year One policy – would completely negate the express and specific language of the Year Two policy.[8]  On the other hand, and Sorenson contends, the "related claims" clause can be harmonized with the "For Shoulder Pumps Only" deductible language of the Year Two policy in this way: whatever was

---

[8]Columbia acknowledged, both in their briefing and at oral argument, that there has never been a shoulder pump claim covered under the Year Two policy.  In fact, given Columbia's position, the Amended Related Claims Letter and the amended definition of "related claims" contained therein, the court cannot conceive of a shoulder pump claim that under Columbia's view would be covered under the Year Two policy Sorenson purchased.

intended to fall within the scope of the "related claims" clause, the parties specifically agreed that it would not include the expressly dealt with shoulder pump claims.  (Def.'s Mem. in Supp. S.J. at 32.)  In sum, the court's conclusion that the Year Two policy provides coverage for shoulder pump claims arising after July 1, 2008 is the only conclusion that gives effect to both the "For Shoulder Pump Only" language and the "related claims" clause.

Additionally, it is a basic rule of construction that "where there is a printed form of contract, and other words are inserted, in writing or otherwise, it is to be assumed that the latter take precedence over the printed material." Bank of Ephraim v. Davis, 559 P.2d 538, 540 (Utah 1977).  The "related claims" clause is part of a paragraph that appears in every Columbia claims-made policy.  (Def.'s Mot. for S.J., Ex. AE, Fleischner Dep. at 15-16.)  The "related claims" clause is part of a pre-printed form, and was not created specifically by these two parties.  (Id., Ex. AI, Marsiano Dep. at 34, 45.)  However, the terms set forth in the Declarations section of the policy, such as the policy premium and deductibles, are by their nature insured-specific.  More significantly, the special "For Shoulder Pumps Only" / "Excluding Shoulder Pumps" deductibles were non-standard terms created specifically for Sorenson.  (Id., Ex. AE, Fleischner Dep. at 51-52.)  Accordingly, under this rule of construction, the terms that were specifically drafted for Sorenson and inserted into the Year Two policy to address the shoulder pump claims it was facing at the time, control over the pre-printed form language, which includes the "related claims" clause found in all Columbia claims-made policies.

Similarly, it is a basic rule of construction that the specific controls the general.  Cady v. A.G. Edwards & Sons, Inc., 648 F. Supp. 621, 626 (D. Utah 1986).  In this case, the "related

24

claims" clause contains generalized, conceptual terms rather than specific, concrete examples,

i.e., there is nothing in the "related claims" clause to specifically provide that any claim arising

from the use of a Sorenson pain pump shall be deemed a "related occurrence" or "related claim."

Conversely, the Year Two deductible terms "For Shoulder Pumps Only" are highly specific and

make a clear distinction between the deductibles "For Shoulder Pumps Only" and for all other

claims "Excluding Shoulder Pumps."  Accordingly, the court concludes that the generally

worded boilerplate "related claims" clause cannot trump the specifically drafted "For Shoulder

Pumps Only" language of the Year Two policy.

2.       **Even if the Year Two Policy Were Ambiguous, Extrinsic Evidence Shows the**
         **Parties Intended to Cover Shoulder Pump Claims Under the Year Two Policy**

However, even if the court were to have concluded that the Year Two policy language

was ambiguous, the extrinsic evidence in this case compels a conclusion in favor of coverage

under the Year Two policy.  As stated previously, the "goal of contract interpretation is to give

effect to the contracting parties' intentions at the time the contract was made."  Smargon v.

Grand Lodge Partners, LLC, – P.3d –, 2012 WL 5258953, *10 (Utah Ct. App. Oct. 25, 2012).

The extrinsic evidence of the parties' intentions in this case overwhelmingly supports the

conclusion that the parties mutually intended that the Year Two policy would cover shoulder

pump claims arising after July 1, 2008.

As the parties were negotiating the terms of the Year Two policy, rather than simply

leave the shoulder pump claims unaddressed as they had done in the Year One policy, the parties

explicitly considered and agreed upon the manner in which shoulder pump claims would be

covered from July 1, 2008 forward, during the Year Two policy.  Columbia underwriter Valerie

Marsiano testified that the purpose of this change in the Year Two policy was to shift more of the financial burden for shoulder pump claims to Sorenson, the insured, in the event that such claims were made during the Year Two policy. (Def.'s Mot. for S.J., Ex. AI, Marsiano Dep. at 66-68, 72-75, 101-102.) Significantly, it was Columbia that proposed the different and specific terms of the increased deductible "For Shoulder Pumps Only," and Sorenson, recognizing that it needed the coverage, agreed to the new and more expensive terms. The inclusion of the "For Shoulder Pumps Only" deductible in the Year Two policy reflected a material term of the parties' bargain, without which Columbia would not have issued the Year Two policy.

Moreover, at the time the Year Two policy was negotiated and agreed upon there was no discussion whatsoever to suggest that the "For Shoulder Pumps Only" deductible would be applicable *only if* Columbia were to determine that the shoulder pump claims did not "relate back" to the Year One policy. In fact, throughout the entirety of negotiations and for weeks following the July 1, 2008 implementation of the Year Two policy, Sorenson had absolutely no indication that Columbia was even considering treating shoulder pump claims as "related claims" under the Year One policy. The court finds it significant that Columbia's decision to treat all shoulder pump claims as "related claims" under the Year One policy *post-dates* the effective date of the Year Two policy by over a month. Columbia did not inform Sorenson of its decision to relate the shoulder pump claims until August 18, 2008, nor did it advise Sorenson of even the possibility that the claims would be deemed "related" at any time prior.

As Sorenson acknowledges, absent the specifically negotiated deductible provision "For Shoulder Pumps Only" in the Year Two policy, it well may be that Columbia could have

26

determined that the shoulder pump claims were related under the Year One policy.  However, once the parties negotiated and agreed upon the explicit shoulder pump terms in the Year Two policy, Columbia could not thereafter unilaterally alter the new agreement.  See, e.g., Provo City Corp. v. Nielson Scott Co., Inc., 603 P.2d 803, 806 (Utah 1979) (providing that "parties to a written contract may modify, waive, or make new contractual terms, even if the contract itself contains a provision to the contrary," provided that "the minds of the parties [] have met upon and asserted contract modification").  In other words, regardless of whether the shoulder pump claims could have been "related claims" under the Year One policy, Columbia and Sorenson were nonetheless free to agree that shoulder pump claims were not "related claims" for the Year Two policy.  The inclusion of the deductible term "For Shoulder Pumps Only" demonstrates that Columbia and Sorenson did just that; they agreed upon new contractual terms that would apply "For Shoulder Pumps Only" beginning on July 1, 2008, under the Year Two policy.

Furthermore, it is undisputed that the significantly higher and unlimited deductibles bargained for in the Year Two policy reflected an agreement about risk allocation that was fundamentally different from the agreement set forth in the Year One policy.  As such, Columbia's August 2008 decision – that all shoulder pump claims would "relate back" to the Year One policy – made *weeks after* entering the Year Two policy, fundamentally altered the allocation of risk bargained for by the parties in the Year Two policy and was contrary to the parties' express intentions at the time of contracting.  In sum, the court concludes as a matter of law that the extrinsic evidence demonstrates that the relevant parties intended that shoulder

27

pump claims would be covered, albeit differently, under the Year Two policy.[9]

Finally, even assuming arguendo, as Columbia insists, that the shoulder pump claims at issue in this case qualify as "related claims" under the Year One policy, then at best the Year One and Year Two policies are in conflict and are ambiguous.  However, as set forth above, this conflict or ambiguity between the Year One and Year Two policies should be resolved as a matter of law in favor of coverage.  LDS Hospital, 765 P.2d at 858.  The Utah Supreme Court has stated: "[T]he purpose of insurance is to insure . . . .  A construction which contradicts the general purpose of the contract or results in hardship or absurdity is presumed to be unintended by the parties."  Id.  The court agrees with Sorenson that "[t]here is no rational explanation for the presence of 'For Shoulder Pumps Only' deductible terms in the Year Two policy if the policy was not intended to apply to Shoulder Pump Claims."  (Def.'s Reply at 36.)  The necessary implication of these specific deductible terms is that shoulder pump claims are covered under the Year Two policy.  This, combined with the overwhelming and undisputed evidence that the parties did, in fact, intend at the time of contracting that the Year Two policy would provide coverage to shoulder pump claims, compels a construction of the Year Two policy in favor of coverage for shoulder pump claims.

--------

[9]Columbia has acknowledged that Marsiano, the underwriter, was acting within the scope of her authority, and that the new deductibles were developed based on "[t]he professional judgment of the underwriter, who knew Sorenson was in the business of manufacturing and distributing pain pumps."  (Def.'s Mot. for S.J., Ex. AB, Columbia's Resp. to Def.'s Interrogatories 13b.) Similarly, Columbia has admitted that underwriting insurance – evaluating risk, quoting policies and binding coverage – is outside the scope of responsibility for the Carbone, George and Morelli, (the individuals responsible for making the "related claims" decision) and Columbia has admitted they played no role the negotiation and agreement upon the "For Shoulder Pumps Only" deductible terms.  (Id.)

**3.**     **Columbia is in Breach of the Year Two Policy**

Having determined as a matter of law that the Year Two policy provides coverage for shoulder pump claims arising after July 1, 2008, the court concludes as a matter of law that Columbia is in breach of the Year Two policy.

Under Utah law, the elements of breach of contract are: (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages. Bair v. Axiom Design, LLC, 20 P.3d 388, 392 (Utah 2001).  Columbia disputes whether Sorenson has shown element (2) performance by the party seeking recovery.  More specifically, Columbia asserts that, although Sorenson paid the $131,300 premium for the Year Two policy, Sorenson has failed to pay any of the $250,000 deductibles for shoulder pump claims, which Columbia claims is a condition precedent to its obligation to pay.  The court disagrees.

Under Utah law, "[a]n anticipatory breach occurs when a party to an executory contract manifests a positive and unequivocal intent not to render its promised performance.  Cobabe v. Stanger, 844 P.2d 298, 303 (Utah 1992).  Further, "[i]t is well settled that an action may be maintained for breach of contract based upon the anticipatory repudiation by one of the parties to the contract."  Id.  As Sorenson points out, on August 18, 2008, when Columbia issued the "Related Claims Letter" manifesting a positive and unequivocal intent to not cover shoulder pump claims pursuant to the Year Two policy, Columbia anticipatorily breached the Year Two policy.

Columbia asserts, however, that it should be relieved of the consequences of its refusal to provide coverage under the Year Two policy in any event because Sorenson has not paid any of

the $250,000 deductibles which Columbia claims are a condition precedent to its obligation to pay.  Again, the court disagrees.  As Sorenson asserts, pursuant to the "first breach" rule and the covenant of good faith and fair dealing implied by law in every contract, Sorenson's failure to pay shoulder pump deductibles cannot be used by Columbia as a defense to Sorenson's claim for breach of contract.  See CCD, LC v. Millsap, 116 P.3d 366, 373 (Utah 2005) (providing that "under the 'first breach' rule a party first guilty of a substantial or material breach of contract cannot complain if the other party thereafter refuses to perform").

## CONCLUSION

For the foregoing reasons, the court concludes as a matter of law that Columbia is contractually obligated to defend and indemnify Sorenson for shoulder pump claims pursuant to the terms of the Year Two policy and Columbia's failure to do so is a breach of the Year Two policy.  Accordingly, Columbia's Motion for Summary Judgment is DENIED and Sorenson's Motion for Partial Summary Judgment is GRANTED.

DATED this 13th day of November, 2012.

_____
Dee Benson
United States District Judge